UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PRIME INCOME ASSET MANAGEMENT, INC. | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:07-CV-1731-B |
| ONE DALLAS CENTRE ASSOCIATES L.P., | § § § § | |
| Defendant. | § | |

## MEMORANDUM ORDER

Before the Court is Defendant One Dallas Centre Associates L.P.'s Motion for Summary Judgment (doc. 36) and Defendant's Objections to Plaintiff Prime Income Asset Management, Inc.'s Summary Judgment Evidence and Motion to Strike (doc. 42). For the reasons discussed below, Defendant's Motion for Summary Judgment is **DENIED in part** and **GRANTED in part** (doc. 36), the Objections are **OVERRULED** (doc. 42), and the Motion to Strike is **DENIED** (doc. 42).

### I. Factual and Procedural Background[1]

Defendant One Dallas Centre Associates L.P. ("ODCA") was formerly the owner of a commercial building known as One Dallas Centre located at 350 North St. Paul Street in Dallas, Texas (the "Property"). On or about December 22, 2006, ODCA entered into a Purchase and Sale Agreement (the "Agreement") with the Plaintiff, Prime Income Asset Management, Inc. ("Prime"),

---

[1] Unless otherwise stated, the relevant facts presented below are taken from the contract between the parties and Prime's statement of undisputed fact contained in the briefing on the Motion for Summary Judgment. The Court assumes these facts are true for purposes of its legal analysis.

- 1 -

for the sale of the Property. The Agreement initially provided that the sale would close on March 2, 2007. However, the closing date could be extended to April 3, 2007 upon ODCA's receipt of a written extension notice from Prime and Prime's deposit of $1,000,000 as additional earnest money. After the execution of the Agreement, Prime, as required by paragraph 1.6 of the Agreement, deposited $750,000 with the escrow agent as earnest money (the "Initial Deposit").

Thereafter, pursuant to paragraph 3.1 of the Agreement, Prime was granted a period of time in which to inspect the Property. Specifically, the Agreement provided that an inspection could take place between December 22, 2006 through January 22, 2007 (the "Inspection Period"). However, the contract provided that Prime's authority to conduct the inspection was contingent upon furnishing to ODCA evidence acceptable to ODCA that Prime (and its agents or consultants) maintained:

> public liability insurance with limits of at least $2,000,000 for bodily or personal injury or death, property damage insurance in an amount of at least $1,000,000, and contractual liability insurance with respect to [Prime's] indemnification obligations under Section 3.1 with respect to damage to the Property and/or injury to persons or property.

ODCA asserts Prime failed to provide required evidence of insurance during the Inspection Period. Rather, ODCA argues, Prime provided evidence of insurance in amounts significantly lower than that required by the Agreement or provided evidence of insurance after the close of the Inspection Period provided by the Agreement. ODCA argues that because Prime did not provide evidence of insurance as required by the Agreement, it was not required to permit an inspection after the close of the Inspection Period. In fact, ODCA asserts the Agreement placed no further obligations on ODCA until closing. However, Prime provides affidavit testimony of its employees

claiming Prime did provide the required insurance to allow inspections, but that ODCA failed to cooperate with Prime's due diligence efforts and did not provide documents which Prime asserts were required to be provided before closing.

On or about February 9, 2007, the parties extended the closing date from March 2, 2007 to April 3, 2007 by executing the First Amendment to Purchase and Sale Agreement (the "First Amendment"). In the First Amendment, Prime agreed that on or prior to February 20, 2007, it would deposit $1,000,000 with the escrow agent as an Extension Deposit. In addition, Prime acknowledged that its failure to make the Extension Deposit would constitute a default under the terms of the Agreement, entitling ODCA to the remedies set forth in Section 6.1 of the Agreement. Section 6.1 of the Agreement provides that in the event of default by Prime, ODCA would be entitled, as its sole remedy, to terminate the Agreement and receive the Earnest Money as liquidated damages for Prime's breach. The Earnest Money, by the terms of the Agreement, includes the sum of the Initial Deposit and any Extension Deposit paid, together will all interest earned on such sum.

Thereafter, Prime and ODCA entered into the Second Amendment to Purchase and Sale Agreement (the "Second Amendment") extending the closing again, this time to April 30, 2007. The Second Amendment expressly provides :

> In consideration for the Agreement by [ODCA] to extend the Date of Closing, (I) [Prime] hereby expressly and irrevocably directs the Title Company to release and pay the [$750,000] Initial Deposit to [ODCA] utilizing the wiring instructions attached to this letter . . . and (ii) [Prime] hereby agrees to pay to [ODCA] the additional sum of $1,000,000 (the "Additional Extension Fee") on or before March 22, 2007, by wire transfer utilizing the Wiring Instructions.

Furthermore, Prime agreed that each of the Initial Deposit and the Additional Extension Fee were non-refundable, but would be applicable to the purchase price at closing. Prime acknowledged that

its failure to pay the Additional Extension Fee would be a default under the terms of the Agreement, entitling ODCA to the remedies set forth in Section 6.1 of the Agreement.

On March 23, 2007, the parties entered into the Third Amendment to Purchase and Sale Agreement (the "Third Amendment"), which extended the time for the Additional Extension Fee from March 22, 2007 to April 3, 2007. The Third Amendment contained wiring instructions for paying the Additional Extension Fee and provided that the Additional Extension Fee would be non-refundable to Prime, but shall be applicable to the purchase price at closing. Again, Prime acknowledged that its failure to pay the Additional Extension Fee would be a default under the terms of the Agreement, entitling ODCA to the remedies set forth in Section 6.1 of the Agreement.

On April 3, 2007, ODCA and Prime entered into the Fourth Amendment to Purchase and Sale Agreement (the "Fourth Amendment"), in which the parties extended the closing date to May 30, 2007 and agreed that Prime would have until one (1) business day after its receipt, via electronic transmission, of a signed counterpart of the Fourth Amendment to pay the Additional Extension Fee. Just as before, the amendment contained wiring instructions for paying the Additional Extension Fee and provided that the Additional Extension Fee would be non-refundable to Prime, but shall be applicable to the purchase price at closing. Again, Prime acknowledged that its failure to pay the Additional Extension Fee would be a default under the terms of the Agreement, entitling ODCA to the remedies set forth in Section 6.1 of the Agreement. On April 9, 2007, ODCA sent a signed copy of the Fourth Amendment to Prime via electronic mail making the due date for the Additional Extension Fee April 10, 2007.

Prime did not pay the Additional Extension Fee. On April 18, 2007, ODCA terminated the Agreement and retained the Initial Deposit which had previously been released to it. Prime filed this

lawsuit on August 17, 2007 in the 116th Judicial District Court in Dallas County, Texas, asserting claims for breach of contract, common-law fraud, negligent misrepresentation, fraud in the inducement, violations of the Texas Business & Commerce Code section 27.01 (fraud in a real estate transaction), "money had and received," exemplary damages, and rescission. Prime asserts ODCA made misrepresentations upon which it relied in amending the Agreement. Prime further asserts ODCA breached the contract by failing to cooperate with Prime's due diligence efforts. ODCA filed a notice of removal to this Court on October 12, 2007.

Now before the Court is ODCA's Motion for Summary Judgment and its Objections to Plaintiff Prime Income Asset Management, Inc.'s Summary Judgment Evidence and Motion to Strike. Pursuant to section 10.14 of the Agreement, the Agreement is governed by and to be construed in accordance with the substantive federal laws and the laws of the state of Texas.

## II. Summary Judgment Standards

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes about material facts will preclude the granting of summary judgment. *Id.*

The burden is on the summary judgment movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. Rather, the movant may satisfy its burden

by pointing to the absence of evidence to support the non-movant's case. *Id.*; *Little*, 37 F.3d at 1075.

Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting Fed R. Civ. P. 56(e)). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000); *Anderson*, 477 U.S. at 248.

### III. Objections to Prime's Summary Judgment Evidence and Motion to Strike

The Court first examines the Defendant's Objections to Prime's Summary Judgment Evidence and Motion to Strike. ODCA asserts numerous objections to Prime's evidence offered in opposition to the Motion for Summary Judgment. To the extent that ODCA objects to Prime's witnesses on the basis that the testimony is "improper opinion testimony" or that they were not disclosed as expert witnesses, the Court **OVERRULES** the objections.[2] The Court has reviewed all of the challenged testimony and concludes that it is based on the witness's own personal knowledge

---

[2] The following objections are **OVERRULED** to the extent they are based on "improper opinion testimony" and nondisclosure of an expert witness: 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 33.

of the day-to-day workings of their job and these witnesses do not fall under Rule 702 as expert witnesses. *See DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679, 685–86 (5th Cir. 2003); *see also Dailey v. Vought Aircraft Indus., Inc.*, 3:03-CV-1633-H, 2004 WL 1068101, at *2–*3 (May 10, 2004). If opinion testimony is based on the particularized knowledge that a witness has by virtue of his or her position in his or her business, such testimony is not expert testimony pursuant to Rule 702. FED. R. EVID. 701 Advisory Committee Note (discussing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993)); *see also U.S. v. Polishan*, 336 F.3d 234, 242 (3d Cir. 2003) ("Lay opinion testimony may be based on the witness's own perception and 'knowledge and participation in the day-to-day affairs of the business.'" (citing *Lightning Lube, Inc.*, 4 F.3d at 1175)).

Furthermore, the objections to this same testimony based on speculation are **OVERRULED** because the testimony is based on personal knowledge.[3] ODCA also objects to much of the same testimony on the grounds that the evidence is irrelevant and inadmissible. The Court **OVERRULES** these objections.[4] The Court has reviewed all of the challenged testimony and concludes that the evidence would assist the jury in determining whether ODCA's actions breached the contract and is, therefore, relevant. *See* FED. R. CIV. P. 401.

For the testimony challenged by the overruled objections, the Motion to Strike is **DENIED**. As to all remaining objections, the Motion to Strike is **DENIED without prejudice** as the Court expressly does not rely upon the challenged evidence in ruling on the Motion for Summary Judgment.

---

[3] The following objections to speculation are **OVERRULED** because the testimony is based on personal knowledge: 5, 6, 7, 16, 26.

[4] The following objections are **OVERRULED** to the extent they are based on relevance: 3, 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 20, 21, 25, 26, 28, 30, 31, 32.

## IV. Breach of Contract Claims

ODCA moves for summary judgment on Prime's claims that ODCA breached the Agreement. Prime opposes the motion claiming ODCA's actions in failing to cooperate in their due diligence efforts and failure to allow inspections of the Property violated various terms of the Agreement. Upon review of the Motion for Summary Judgment, Defendants' responsive briefing, and the summary judgment evidence to which objections were overruled or went otherwise unchallenged, the Court finds that ODCA is not entitled to summary judgment on the breach of contract claims. ODCA has failed to meet its burden to show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law as to the breach of contract cause of action.

There are disputes between the parties such as whether Prime met the evidence of insurance requirement that would entitle it to perform inspections of the Property and whether ODCA's failure to provide various documents in response to Prime's requests violated certain terms of the contract. Prime has brought forth sufficient evidence to create a material issue of fact on whether ODCA's actions breached the Agreement. Therefore, finding that material issues of fact exist in regard to the breach of contract cause of action, the Court **DENIES in part** Defendant's Motion for Summary Judgment (doc. 36). At trial, if ODCA finds that there is no legally sufficient evidentiary basis on certain issues in controversy in the case, it may move for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure, after Plaintiff has been fully heard on those issues.

## V. Fraud Claims

ODCA also asserts it is entitled to judgment as a matter of law on all of Prime's fraud-related claims, which would include the common-law fraud, negligent misrepresentation, fraud in the

inducement, and Texas Business & Commerce Code section 27.01 (fraud in a real estate transaction) causes of action. Prime's fraud-related claims are based on alleged oral representations made by ODCA's representatives in regard to ODCA's ability to provide certain documents and information to Prime, as well as when such documents would be provided. However, as discussed below, Prime is unable to make a prima facie case as to its fraud-related claims because the element of justifiable reliance has been negated as a matter of law.

## A. Applicable Law

Each of the separate fraud-related claims brought by Prime share in common the requirement that the plaintiff must prove justifiable reliance on the representations made by the defendant. *See Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001) (fraud); *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (negligent misrepresentation); *Haase v. Glazner*, 62 S.W.2d 795, 798 (Tex. 2001) (fraudulent inducement); *Coldwell Banker Associates v. Ryan Equity Partners Ltd.*, 181 S.W.3d 879, 888 (Tex. App.–Dallas 2006, no pet.) (statutory fraud); TEX. BUS. & COM. CODE § 27.01(a)(1)(B), (a)(2)(D) (statutory fraud); s*ee also Coastal Bank SSB v. Chase Bank of Texas, N.A.*, 135 S.W.3d 840, 842–43 (Tex. App.–Houston [1st Dist.] 2004, no pet.) (fraud, negligent misrepresentation, fraudulent inducement). The reliance element of statutory fraud under the Texas Business & Commerce Code the same as common-law fraud. *Fisher v. Yates*, 953 S.W.2d 370, 381 n.7 (Tex. App.–Texarkana 1997, no pet.) (citing *Haralson v. E.F. Hutton Group, Inc.*, 919 F.2d 1014, 1025 n.4 (5th Cir. 1990)).

## B. Texas Law on Contractual Disclaimer of Reliance

Under Texas law, contracting parties may create contractual provisions that disclaim reliance. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008)*; Schlumberger Tech. Corp.*

*v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). In interpreting the contractual provisions, the court must consider the entire writing and strive to reconcile and "give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (emphasis in original). "The contract and the circumstances surrounding its formation determines whether the disclaimer of reliance is binding." *Schlumberger*, 959 S.W.2d at 179–80. "Generally, reliance on representations made in a business or commercial transaction is not justified when the representation takes place in an adversarial context." *Coastal Bank SSB*, 135 S.W.3d at 843 (citing *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 794 (Tex. 1999)). "A party to an arm's length transaction must exercise ordinary care and reasonable diligence for the protection of his own interests, and a failure to do so is not excused by mere confidence in the honesty and integrity of the other party." *Id.*

The Texas Supreme Court has found a clear and specific intent to disclaim reliance when "sophisticated parties, represented by competent legal counsel, included an emphatic particularized disclaimer of reliance in the contract." *Schlumberger*, 959 S.W.2d at 180. Therefore, a disclaimer of reliance contained in a contract can negate a fraud claim's element of reliance as a matter of law. *See Forest Oil Corp.*, 268 S.W.3d at 61; *Schlumberger*, 959 S.W.2d at 179. A merger clause in a contract can also negate reliance. *See Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 571 (5th Cir. 2003); *U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399, 403 (5th Cir. 2000). If, in addition to a simple merger clause, there is language in a contract stating the contract was "in lieu of any and all prior or contemporaneous agreements, conditions, or understandings," this would "explicitly contradict the assertion that the parties relied on promises to enter further contracts." *See U.S. Quest Ltd.*, 228 F.3d at 403.

The Texas Supreme Court has recently clarified its holding in *Schlumberger* and set out what it regards as the "most relevant" factors surrounding a contract's formation that demonstrate a clear and unequivocal expression of intent to disclaim reliance. *See Forest Oil Corp.*, 268 S.W.3d at 60–61. The "totality of the circumstances" factors which guided the Texas Supreme Court's holding in *Schlumberger* included:

> (1) the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute;
>
> (2) the complaining party was represented by counsel;
>
> (3) the parties dealt with each other in an arm's length transaction;
>
> (4) the parties were knowledgeable in business matters; and
>
> (5) the release language was clear.

*Forest Oil Corp.*, 268 S.W.3d at 60. In holding that the disclaimer of reliance refuted the required element of reliance, the Texas Supreme Court reasoned, "[i]f disclaimers of reliance cannot ensure finality and preclude post-deal claims for fraudulent inducement, then freedom of contract, even among the most knowledgeable parties advised by the most knowledgeable legal counsel, is grievously impaired." *Id.* at 61.

**C. Analysis of Justifiable Reliance**

At the outset, the Court notes that this was a multi-million dollar arm's length transaction for the sale of a downtown Dallas commercial building between sophisticated parties represented by attorneys on both sides. *See Forest Oil Corp.*, 268 S.W.3d at 60–61; *Coastal Bank SSB*, 135 S.W.3d at 843. Furthermore, the Court notes that the Agreement between ODCA and Prime contains extensive disclaimers in which Prime disclaims reliance on representations made by ODCA. *See*

*Forest Oil Corp.*, 268 S.W.3d at 61; *Schlumberger*, 959 S.W.2d at 179. One such section states:

> 9.1 <u>No Reliance on Documents.</u> Except as expressly stated herein or any other documents executed in connection with this Agreement, Seller makes no representation or warranty as to the truth, accuracy or completeness of any materials, data or information delivered by Seller to Purchaser in connection with the transaction contemplated hereby.

Moreover, the disclaimer contained in section 9.2 of the Agreement is emphasized in all capital lettering, which for the ease of reading the Court will not replicate, and states:

> 9.2 <u>DISCLAIMERS.</u> Except as expressly set forth in this Agreement or any other documents executed in connection with this Agreement, it is understood and agreed that **Seller is not making and has not at any time made any warranties or representations of any kind or character, expressed or implied, with respect to the property, including, but not limited to,** any warranties or representations as to habitability, merchantability, fitness for a particular purpose, title (other than Seller's limited warranty of title to be set forth in the deed) zoning, tax consequences, later or patent physical or environmental condition, utilities, operating history or projections, valuation, governmental approvals, the compliance of the property with governmental laws (including, without limitation, accessibility for handicapped persons), **the truth, accuracy or completeness of the property documents or any other information provided by or on behalf of Seller to Purchaser, or any other matter or thing regarding the property.** Purchaser acknowledges and agrees that upon closing Seller shall sell and convey to Purchaser and Purchaser shall accept the property "as is, where is, with all faults," except to the extent expressly provided otherwise in this Agreement or any other documents executed in connection with this Agreement. **Purchaser has not relied and will not rely on, and Seller is not liable for or bound by, any expressed or implied warranties, guaranties, statements, representations or information pertaining to the property or relating thereto** (including specifically, without limitation, property information packages distributed with respect to the property) made or furnished by Seller, the manager of the property, or any real estate broker or agent representing or purporting to represent Seller, to whomever made or given, directly or indirectly, orally or in writing, unless specifically set forth in this Agreement or any other documents executed in connection with this Agreement.

. . . (emphasis added).

Furthermore, the Agreement contains the following clause regarding modification:

> 10.7 <u>Modifications.</u> This Agreement cannot be changed orally, and no executory agreement shall be effective to waive, change, modify or discharge it in whole or in part unless such executory agreement is in writing and signed by the parties against whom enforcement of any waiver, change, modification or discharge is sought.

Additionally, the Agreement contains a merger clause stating:

> 10.10 <u>Entire Agreement.</u> This Agreement, including the Schedule and Exhibits, contains the entire agreement between the parties pertaining to the subject matter hereof and fully supersedes all prior written and oral agreements and understandings between the parties pertaining to such subject matter.

The rules of contract interpretation direct the Court to assume the parties intended every provision to have some meaning. *See Coker*, 650 S.W.2d at 393. Therefore, the Court must presume the parties contemplated the disclaimers and merger clause contained in the Agreement. *See id.*; *see also Schlumberger*, 959 S.W.2d at 180.

Based on the disclaimers and merger clause set forth above, taking into account the nature of the transaction and the totality of the circumstances surrounding the Agreement, the justifiable reliance element common to all of the fraud-related claims has been negated as a matter of law. *See Armstrong*, 333 F.3d at 571; *U.S. Quest Ltd.*, 228 F.3d at 403; *Forest Oil Corp.*, 268 S.W.3d at 60–61; *Schlumberger*, 959 S.W.2d at 179–80. The Court finds that Prime has not made a prima facie case for common-law fraud, negligent misrepresentation, fraudulent inducement, or violations of Texas Business & Commerce Code section 27.01 (fraud in a real estate transaction) and, accordingly, the Court grants summary judgment in favor of ODCA on these claims.

## VI. "Money Had and Received" Claim

ODCA also moves for summary judgment in its favor on Prime's claim for "money had and received" seeking return of the Initial Deposit. Prime claims that the Initial Deposit should be returned because, "in equity and good conscience," it "belongs" to Prime. On the other hand, ODCA argues the Initial Deposit is non-refundable by the terms of the Agreement and it is entitled to judgment as a matter of law. The Court agrees with ODCA.

### A. Applicable Law

A claim for "money had and received" is an equitable remedy. *Edwards v. Mid-Continent Office Distributors, L.P.*, 252 S.W.3d 833, 836 (Tex. App.–Dallas 2008, pet. denied). The claim "belongs conceptually to the doctrine of unjust enrichment." *Id.* at 837 (quoting *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.–El Paso 1997, no writ)). Such a claim generally is not premised on wrongdoing, "but seeks to determine to which party, in equity, justice, and law, the money belongs." *Id.* (citing *Staats v. Miller*, 243 S.W.3d 686, 687 (1951)). "To prove the claim, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him." *Id.* (citing *Best Buy Co. v. Barrera*, 248 S.W.3d 160, 162–63 (Tex. 2007) (per curiam)).

### B. Principles of Contract Interpretation

In construing a contract, the primary goal is to discern "the true intent of the parties" as conveyed through the terms of the contract. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). The court must consider the entire writing and strive to reconcile and "give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Coker*, 650 S.W.2d at 393 (emphasis in original). The objective intent of the parties controls over any subjective intent. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968).

If there is no ambiguity in an agreement, the court may construe the agreement as a matter of law. *Coker*, 650 S.W.2d at 393.

A contract is ambiguous "when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." *Id.* However, when a contract can only be reasonably interpreted one way, "[t]he failure to include more express language of the parties' intent does not create an ambiguity." *Instone Travel Tech Marine & Offshore v. Int'l. Shipping Partners*, 334 F.3d 423, 431 (5th Cir. 2003) (quoting *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 591 (Tex. 1996)). The determination of whether a term is ambiguous is a legal question. *D.E.W., Inc. v. Local 93, Laborers' Int'l Union of N. Am.*, 957 F.2d 196, 199 (5th Cir. 1992). An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994).

**C. Analysis of Refundability of the Initial Deposit**

The parties offer conflicting interpretations of the Agreement in regard to the whether Prime may be entitled to the return of its Initial Deposit, but that alone does not mean the contract is ambiguous on this point. *See Forbau*, 876 S.W.2d at 133. Therefore, the Court reviews the Agreement and Amendments to determine if the terms are clear on whether the Initial Deposit is refundable. *See Coker*, 650 S.W.2d at 393. The Court notes that while the original Agreement does not state that the Initial Deposit was non-refundable, the Second Amendment provided that the Initial Deposit was to be released to ODCA and was non-refundable. In fact, the language states that Prime "expressly and irrevocably" directs the Title Company to release the funds to ODCA, and the release of the Initial Deposit was expressly made as consideration for the extension of the closing date in the Second Amendment.

As support for its position that the Initial Deposit is refundable, Prime argues that the Third and Fourth Amendments to the Agreement do not state that the Initial Deposit is non-refundable and, thus, the later amendments "eliminated the provision that the 'initial deposit' is non-refundable." Prime further argues that because the default provision in section 6.2 of the Agreement which provides for the return of the Earnest Money in case of default by ODCA was not specifically mentioned in the Second Amendment, it has not been amended by the Second Amendment. Thus, Prime argues, it is still entitled to return of the Initial Deposit in the event of ODCA's default.

The Court is not swayed by Prime's arguments. Again, the Court notes that this was a multi-million dollar arm's length transaction for the sale of a downtown Dallas commercial building sophisticated parties represented by attorneys on both sides. In consideration for extending the closing date a second time, the Initial Deposit was released to ODCA pursuant to the explicit instructions in the Second Amendment. While the Initial Deposit was then non-refundable, it would still be applied to the purchase price at the closing of the sale. The Court finds that the language in the Second Amendment which made the Initial Deposit non-refundable and provides for its release to ODCA, clearly shows the parties' intent to take this money "off the table" as far as its potential return to Prime in the future. *See Nat'l Union Fire Ins. Co.*, 907 S.W.2d at 520; *City of Pinehurst*, 432 S.W.2d at 518. In fact, the language itself demonstrates an objective intent that the release of the funds be *irrevocable*. *See id.*; *see also Coker*, 650 S.W.2d at 393.

The Court finds that the terms of the Agreement with regard to the refundability of the Initial Deposit are unambiguous. *See Coker*, 650 S.W.2d at 393. Further, the Court finds the objective intent of the parties, and only reasonable interpretation of the Agreement and its Amendments, is that the Initial Deposit was irrevocably non-refundable and was released to ODCA

as consideration for the extension granted in the Second Amendment. *See City of Pinehurst*, 432 S.W.2d at 518; *Coker*, 650 S.W.2d at 393. Accordingly, by the clear and express terms of the Agreement between the parties, the Initial Deposit now belongs to ODCA, not Prime. Therefore, with regard to Prime's equitable claim for "money had and received" seeking the return of the Initial Deposit in "equity and good conscience," the Court grants summary judgment in favor of ODCA. *See Edwards*, 252 S.W.3d at 836.

### VII. Conclusion

ODCA's Objections are **OVERRULED** and the Motion to Strike Prime's Summary Judgment Evidence is **DENIED**. ODCA's Motion for Summary Judgment (doc. 36) is **DENIED in part** and **GRANTED in part**. The breach of contract claim cannot be disposed of on summary judgment due to the existence of genuine issues of material fact. Therefore, as to the breach of contract claim, summary judgment is **DENIED**. However, as to the common-law fraud, negligent misrepresentation, fraudulent inducement, fraud in a real estate transaction, and "money had and received" claims, Defendant has demonstrated that it is entitled to summary judgment. Therefore, on these claims, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DISMISSES** the common-law fraud, negligent misrepresentation, fraudulent inducement, fraud in a real estate transaction, and "money had and received" claims.

SO ORDERED.

Dated: February 18, 2009

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE